IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARGARET MIKE, WILLIAM MIKE,
SHANNON MIKE and GEORGETTE
MIKE, individually,

and

SHANNON MIKE AND GEORGETTE
MIKE as parents and next friends of
AE.M., AU.M and AA.M, minor children

        Plaintiffs,

v.                                                                  No. 12-cv-01215-WDS/LFG

TERRY MCCOY, STEVE JACKSON,
DAVE McCALL, MANASSEH BEGAY, and
KORY FAULK, individually, and as Law Enforcement
Officers and Employees of SAN JUAN COUNTY
SHERIFF'S DEPARTMENT, and DEPUTIES AND
EMPLOYEES OF SAN JUAN COUNTY SHERIFF'S
DEPARTMENT WHOSE IDENTITIES ARE UNKNOWN
AT THIS TIME,

and

WALTER NICKERSON and DAVID KING,
individually, and as Law Enforcement Officers
and Employees of CITY OF FARMINGTON
POLICE DEPARTMENT, and OFFICERS
AND EMPLOYEES OF FARMINGTON POLICE
DEPARTMENT WHOSE IDENTITIES ARE
UNKNOWN AT THIS TIME,

        Defendants.

**FARMINGTON DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY AND ON
<u>PLAINTIFFS' INABILITY TO SUPPORT CLAIMS</u>**

        Pursuant to Fed.R.Civ.P. 12(b)(6) and D.N.M.LR-Civ. 7, Defendants Walter Nickerson and

David King (collectively, the "Farmington Defendants") submit this Memorandum In Support of

their Motion for Summary Judgment Based on Qualified Immunity and on Plaintiffs' Inability to Support Claims.  Due to the nature of this Motion, concurrence was not sought.

## INTRODUCTION

This case arises from the March 19, 2012 stop of a car driven by William Mike (the "Mike vehicle") by officers from the San Juan County Sheriff's Department (SJCSD) and the City of Farmington Police Department (FPD). Occupants of the Mike vehicle were William Mike, Margaret Mike, and three minors. While the parents of the minors are the ones asserting claims on the minors' behalf, the parents were not in the vehicle, and the word "Plaintiffs" in this Memorandum refers to the occupants of the Mike vehicle.

Plaintiffs allege that they were unlawfully seized in violation of state and federal law because 1) there was no basis for the initial stop; 2) the detention continued even after the officers knew there was no basis for the stop; and 3) the officers used excessive force during the stop. Plaintiffs also maintain that they were victims of racial profiling.  However, Plaintiffs' claims fail as a matter of law both because the stop was permissible and there is no evidence that law enforcement officers used excessive force under state and federal law and because the officers are entitled to qualified immunity.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Farmington Defendants adopt each of the 23 Material Facts stated in the Memorandum Supporting the Motion for Summary Judgment filed by Terry McCoy, Steven Jackson, Dave McCall, Manasseh Begay and Kory Faulk on June 19, 2013, filed as Document 30 in this action ("SJCSD Memorandum"), and each of the exhibits filed in support of that motion, as if fully stated or attached here. The Farmington Defendants add the following Undisputed Material Facts:

24.     On March 19, 2012, at or about 9:15 a.m., the Farmington Defendants responded to the SJCSD Deputy Terry McCoy's request for assistance.  Affidavit of David King, filed concurrently ("King Affidavit"), at ¶3; Affidavit of Walter Nickerson, filed concurrently, ("Nickerson Affidavit") at ¶ 3.

25.     The Farmington Defendants caught up to the suspect vehicle, a dark Chevrolet sedan with no visible license plate and darkly tinted windows, at Broadway and Orchard, in the City of Farmington.  King Affidavit at ¶ 4; Nickerson Affidavit at ¶ 4.

26.     Officer King activated his emergency equipment and pulled to the driver side of the suspect vehicle as it came to a stop. King Affidavit at ¶ 5; Nickerson Affidavit at ¶ 5.

27.     Officer King took cover behind their driver doors and drew their duty weapons.  King Affidavit at ¶ 6; Nickerson Affidavit at ¶ 6.

28.     Officer King gave commands over a bull horn to the occupants to exit the vehicle, starting with the driver and working to the back seat occupants.  King Affidavit at ¶7.

29.     Officer Nickerson provided cover for other officers as the occupants of the suspect vehicle exited the vehicle and as Juan County deputies took the adult occupants into custody.  Nickerson Affidavit at ¶ 7.

30.     The San Juan County deputies took the adults into custody, while FPD Officer Nickerson and Officer King each took one of the juveniles.   King Affidavit at ¶ 8.

31.     Officer King  placed one juvenile female, who was not handcuffed,  in the rear driver side of his unit.  King Affidavit at ¶ 9.

32.     Officer Nickerson placed one boy, who was not handcuffed, in the rear driver side of his unit. Nickerson Affidavit at ¶ 9.

33.     Officer Nickerson comforted the boy, turned the heater in his unit on for him and continued to provide cover for the short remaining duration of the stop. Nickerson Affidavit at ¶10.

34.     Officer King then approached the suspect vehicle with the deputies to make sure there were no other occupants hiding in it. King Affidavit at ¶ 10.

35.     While Officer King was running the VIN of the suspect vehicle through dispatch, he heard one of the deputies say this was not the right vehicle. King Affidavit at ¶11.

36.     Officer King returned to his unit and let the juvenile female out and explained to her why SJCSD and FPD stopped them and why SJCSD and FPD conducted the stop the way they did. King Affidavit at ¶ 12.

37.     The female then walked over toward the SJSCD deputies, where the adult occupants of the suspect vehicle were located. King Affidavit at ¶13.

38.     Neither Officer Nickerson nor Officer King searched any person or placed anyone in handcuffs. King Affidavit at ¶14, Nickerson Affidavit at ¶ 11.

39.     Neither Officer Nickerson nor Officer King searched the suspect vehicle. King Affidavit at ¶ 15; Nickerson Affidavit at ¶12

**STANDARD FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY**

Plaintiffs allege that they were unlawfully seized because there was no basis for the initial stop, because the detention continued even after the officers knew there was no basis for the stop, and because the officers used excessive force during the stop.

"Qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial." Clark v. Edmunds, 513 F.3d 1219, 1222 (10th Cir. 2008). A motion for summary judgment based on a qualified immunity defense is determined differently than other motions for summary judgment. Id. When an individual defendant raises

4

the affirmative defense of qualified immunity in a summary judgment motion, the burden shifts to the plaintiff to satisfy a strict two part test. Id.  First, that the defendant's actions violated a constitutional or statutory right and, second, that the right at issue was clearly established at the time of the defendant's unlawful conduct. Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012). That determination of whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).  Thus, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation ... he confronted." ld. at 202.

"If the plaintiff fails to carry his heavy burden, the public official prevails.  If the plaintiff carries his burden, the burden shifts back to the public official to demonstrate no genuine issues of material fact exist under the normal summary judgment standards." Brown v. Thornton, No. CIV 04-233 BRB/RLP, Memorandum Opinion and Order, at 6 (D.N.M. July 28, 2005), citing Mick v. Brewer, 76 F.3d 1127, 1134 (l0th Cir. 1996) and Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Thomas v. Durastanti, 607 F.3d 655, 661, n. 4 (10th Cir. 2010).  Plaintiffs can prove neither of the required elements in this case and the Farmington Defendants are entitled to summary judgment as a matter of law.

**THE FARMINGTON DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

In their Complaint for Damages for Deprivation of Civil Rights under 42 U.S.C. § 1983, Unlawful Search and Seizure, Excessive Force, False Arrest or Detention, and Assault and Battery ("Complaint"), Plaintiffs only mention the Farmington Defendants by name in three paragraphs, Paragraphs 8, 30 and 34.  In Paragraph 8, the Farmington Defendants are identified and the allegations made in that paragraph were admitted by the Farmington Defendants.  In response to

5

Paragraph 28 of the Complaint, the Farmington Defendants admit the law enforcement officers had drawn firearms, the occupants of the Mike automobile were all removed, ordered to place their hands behind their heads and were placed in police vehicles.  In response to Paragraph 32 of the Complaint, the Farmington Defendants admit that they were patrol officers or officers who had experience as patrol officers and would have some familiarity with vehicles on the road and some experience and training in identifying vehicles by make, model, color and year of production.  Without more, the Farmington Defendants are grouped with the other law enforcement officers in the paragraphs of the Complaint alleging they deprived Plaintiffs of their of Civil Rights under 42 U.S.C. § 1983, they unlawfully searched and seized Plaintiffs, used excessive force against Plaintiffs, falsely arrested and detained Plaintiffs and assaulted and battered Plaintiffs.  These allegations are unsupported and must fail.

    A.    <u>The Farmington Defendants Did Not Unlawfully Search or Seize Plaintiffs</u>.

Neither of the Farmington Defendants searched any person or place anyone in handcuffs. King Affidavit at ¶14, Nickerson Affidavit at ¶ 11.  Neither of the Farmington Defendants searched the suspect vehicle. King Affidavit at ¶ 15; Nickerson Affidavit at ¶12.  Thus, the claims for unlawful search and seizure fail factually.  Even if they had participated in the search and seizure of the Plaintiffs, there was reasonable suspicion supported by articulable facts that criminal activity may be afoot.  <u>Morris</u>, 672 F.3d 1191; *see* SJCSD Memorandum, Material Facts 3 through 14.  The courts must look to the totality of the circumstances and defer to the ability of a trained law enforcement officer to distinguish between suspicious and innocent actions. <u>United States v. Karam</u>, 496 F.3d 1157, 1162 (10th Cir. 2007).  The stop must cease once the officers suspicions are dispelled, as this stop did. <u>United States v. Winder</u>, 557 F.3d 1129, 1134 (10th Cir. 2009).  From the police dispatch, the Farmington Defendants reasonably believed that the Mike vehicle generally matched the description of the vehicle involved in the crime spree.  Reasonable

6

suspicion evaporated after all the Plaintiffs exited the car and, at that time, the Plaintiffs were sent on their way in less than 15 minutes. Even if there had been a search or seizure by the Farmington Defendants, it would have been reasonable in scope and duration. Dismissal of this case on the grounds of qualified immunity is justified.

   B. <u>The Farmington Defendants Did Not Assault or Batter Plaintiffs</u>.

The allegations of assault and battery arise from the handcuffing, which the Farmington Defendants did not do, and the drawing of firearms during the felony stop. It is standard operating procedure during a felony stop, for officers to provide cover until the threat of danger passes. Both Farmington Defendants drew their firearms and provided cover. King Affidavit at ¶ 6; Nickerson Affidavit at ¶ 6. The question for the Court is whether drawing duty weapons during a felony stop violated the Plaintiffs' clearly established constitutional rights. For a right to be "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Given the severity of the crime spree and the description of the vehicle they had received, the Farmington Defendants reasonably believed that occupants of the Mike vehicle posed an immediate danger. *See* <u>Novitsky v. City of Aurora</u>, 491 F.3d 1244, 1254 (10th Cir. 2007). Officers are allowed to use force, if drawing duty weapons can be considered force, to protect their personal safety. <u>Id</u>.

   C. <u>The Farmington Defendants Did Not Violate Plaintiffs' Constitutional Rights</u>.

The question whether excessive force was used requires a determination of objective reasonableness: "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) (citations omitted). As this Court has previously recognized, "Courts are to look at three criteria when making this reasonableness inquiry: "1)

7

the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of the officers, and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Holguin v. City of Albuquerque, No. CIV 05-302 JB/RHS, 2006 U.S. Dist. LEXIS 29489, *21-22 (D.N.M.March 1, 2006) (quoting Hinton v. City of Elwood, Kan., 997 F.2d 774, 780 (10111 Cir.1993) (citation and internal quotations omitted)). "The 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, Memorandum Opinion and Order, at 10 (D.N.M. May 10, 2004) (quoting Graham v. Connor, 490 U.S. at 396). The Court must also keep in mind that "police officers... make split-second judgments - in circumstances that are tense, uncertain and rapidly evolving - about the amount of force necessary in a particular situation." Blossom v. Yarbrough, 429 F.3d 963, 967 (101 Cir. 2005).

In this case, it was reasonable for the Farmington Defendants to assume that the unknown Plaintiffs posed an immediate threat to the safety of Deputy McCoy, when he stopped the suspect vehicle. It is well-established that law enforcement officers are entitled to take reasonable steps to protect themselves when faced with the possibility of danger. *See* Cortez v. McCauley, 478 F.3d 1108, 1130 (10th Cir. 2007) ("officers may in appropriate circumstances take steps to protect their personal safety"); *see also* Gallegos v. City of Colorado Springs, 114 F.3d 1024, 1030 (10th Cir. 1997) (police officers entitled to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo); United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir.1993) (officers are not required to take unnecessary risks and are authorized to protect their personal safety by reasonably necessary means).

8

The Tenth Circuit recently decided a case that has a remarkably similar fact pattern, except for the extent of that plaintiff's damages, to the present case; Lord v. Hall, 2013 WL 1297352 (4/2/13) (Col.).  This unpublished order and judgment are cited here, as Lord, for its persuasive value, consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.  In Lord, like the present case, law enforcement officers were sued individually for deprivation of civil rights under 42 U.S.C. § 1983, unlawful arrest, excessive force and, under state law, assault and battery. Id. at 1.  The district court granted summary judgement in favor of the police officers and plaintiff appealed. Id. at 2.  The Tenth Circuit affirmed summary judgment on the federal claims and remanded the state law claims for dismissal without prejudice. Id.

The Lord facts follow. Mr. Lord's truck matched the general description of a truck involved in an armed robbery, a fact that Mr. Lord disputed. Id. At 2-3.  When the police officers saw the plaintiff's truck, they initiated a traffic stop, as the SJCSD deputy did in the present case. Id.  Like the present case, Mr. Lord was handcuffed and the officers looked into the truck to see if other people were in there.  Unlike the present case, Mr. Lord became agitated and uncooperative and was badly injured when he resisted arrest. Unfortunately, Mr. Lord was severely injured in the course of the stop of his truck, which was determined not to be the truck involved in the armed robbery.  Likewise, the Mike vehicle was quickly determined not to be the vehicle involved in the crime spree and, luckily, Plaintiffs were released without injury. In Lord, even after an innocent man was injured in a stop, the officers were found to be entitled to qualified immunity because the police officers are entitled to have the Court review the officers' conduct from the perspective of an officer making split second decisions on the scene rather than from the perspective of 20/20 hindsight. Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001); Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, Memorandum Opinion and Order, at 10 (D.N.M. May 10, 2004) (quoting Graham

9

v. Connor, 490 U.S. at 396). The same analysis that was done by the Tenth Circuit in Lord, and the same result, applies here and the Farmington Defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Farmington Defendants respectfully request that this Court grant their Motion for Summary Judgment on the Grounds of Qualified Immunity on all counts made against them in their individual capacities, award them their attorney fees and costs, and order all other relief this Court deems just and proper.

                                    WIGGINS, WILLIAMS & WIGGINS
                                    A Professional Corporation

                                    By *s/ Patricia G. Williams*
                                        Patricia G. Williams
                                    Attorneys for the Farmington Defendants
                                    1803 Rio Grande Blvd., N.W. (87104)
                                    P. O. Box 1308
                                    Albuquerque, New Mexico 87103-1308
                                    (505) 764-8400

We hereby certify that a copy of the
foregoing was electronically served
to counsel of record through the CM/ECF
system on this 16th day of July, 2013.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By  *s/ Patricia G. Williams*
      Patricia G. Williams

G:\PW\CLIENTS\2448-City of Farmington et al\009-Margaret Mike et al\Pleadings\Qualified Immunity brief.wpd